**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| **NA'IM ANDERSON,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. JKB-23-1842** |
| **BALTIMORE COUNTY, et al.,** | * | |
| **Defendants.** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM**

Plaintiff Na'Im Anderson filed suit on July 10, 2023, and filed an Amended Complaint on August 2, 2023. (ECF Nos. 1, 13.) His Amended Complaint names as Defendants Baltimore County, the State of Maryland, the Office of the State's Attorney for Baltimore County, and Officers Nicholas Wolferman and Chad Sholter in their individual and official capacities. (ECF No. 13 ¶¶ 1–5.) He brings eight separate counts, some of which allege multiple violations, all against each of the Defendants. The claims can be divided into three broad categories. First, common law tort claims: Count I (False Arrest); Count II (False Imprisonment); Count III (Malicious Prosecution); Count IV (Abuse of Process); Counts V and VI (Fabrication of Evidence)[1]; and Count VIII (Intentional Infliction of Emotional Distress ("IIED")). Second, Maryland Constitutional claims: Count V (Violation of Articles 24 and 26 of the Maryland Declaration of Rights). Third, federal Constitutional claims: Count V (Fourth Amendment)[2];

---

[1] Both Fabrication of Evidence claims will be considered as one claim. To the extent Anderson alleges that any fabrication of evidence violates the Maryland Declaration of Rights or Federal Constitution, that contention will be considered with the respective constitutional categories.

[2] No cause of action is provided for this Fourth Amendment claim. Because a Fourth Amendment violation is also alleged pursuant to § 1983, the Court will consider any Fourth Amendment violation under the § 1983 framework.

Count VI (42 U.S.C. § 1983 Claim for Violation of Anderson's Fourth, Fifth, and Fourteenth Amendment Rights and Privileges)³; and Count VII (42 U.S.C. § 1983 Claim for Negligent Supervision, Training, Retention, and Custom or Policy of Deliberate Indifference). Anderson seeks compensatory and punitive damages from the Defendants. (*See, e.g.,* ECF No. 13 at 12–13.)

Before the Court are various motions from Anderson and the Defendants: Sholter and Wolferman's Motion for Leave to File Physical Exhibit (ECF No. 19), Sholter and Wolferman's Motion to Dismiss Amended Complaint or for Summary Judgment (ECF No. 20), Baltimore County, Maryland's Motion to Dismiss Amended Complaint (ECF No. 21), the State of Maryland and State's Attorney for Baltimore County's Motion to Dismiss (ECF No. 22), Anderson's Motion to Strike and Exclude from Consideration Wolferman and Sholter's 'Undisputed Facts' and Attached Exhibits Supporting their Motion to Dismiss Amended Complaint or for Summary Judgement (ECF No. 24), and Anderson's Motion to Strike and Exclude from Consideration Baltimore County's 'Undisputed Facts' and Attached Exhibits Supporting their Motion to Dismiss Amended Complaint or for Summary Judgement (ECF No. 25). The Court resolves each of these Motions below, and Anderson's Amended Complaint (ECF No. 13) will be dismissed in its entirety.⁴ A separate Order will issue.

## I.   BACKGROUND

The Court will accept Anderson's allegations as true for the purpose of evaluating these Motions and will draw all reasonable inferences in his favor. *See DeMasters v. Carilion Clinic,*

---

³ The Court has not discerned any possible Fifth Amendment violation other than a Due Process violation. Because the Fifth Amendment Due Process Clause applies to the federal government, and, in any case, is judged on the same standards as the Fourteenth Amendment Due Process Clause, *United States v. Al-Hamdi*, 356 F.3d 564, 573 n.11 (4th Cir. 2004), the Court will consider only the Fourteenth Amendment claims.

⁴ Claims are dismissed with prejudice where amendment regarding those claims would be futile. *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (holding that a district court did not err in dismissing claims with prejudice it was "clear that amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability"). The rest of Anderson's claims will be dismissed without prejudice.

796 F.3d 409, 416 (4th Cir. 2015) (citing *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997)).

On July 13, 2021, Anderson was a rear-seat passenger in a car when Wolferman stopped the vehicle and arrested all of the people in the vehicle, including Anderson. (ECF No. 13 ¶ 11.) Anderson did not own the car, was not the driver of the car, and had no knowledge of any substances in the car. (*Id.* ¶ 12–13.) Anderson did not have knowledge of the contents of the car's locked glove box, nor did he have access to the glove box. (*Id.* ¶ 15.) Anderson had only been riding in the car for approximately one minute before Wolferman stopped them. (*Id.* ¶ 16.) Thereafter, Wolferman and Sholter charged Anderson with possession of marijuana.[5] (*Id.* ¶ 25.) Anderson had to retain private counsel and "incurred fees and expenses." (*Id.* ¶ 29.) Anderson was held without bail from July 13, 2021 until January 13, 2022, when he was "released to a private home monitoring program . . . for which he incurred further substantial costs and expenses." (*Id.* ¶ 31.)

At the time of the stop and Anderson's arrest, the Baltimore County Police Department ("BCPD") outsourced testing of controlled substances, including suspected marijuana, to National Medical Services labs ("NMS"). (*Id.* ¶ 18.) On August 5, 2021, however, Wolferman and Sholter received a letter from the Maryland State Police stating that outsourcing of testing of suspected drugs to NMS had been ceased, due to an issue certifying its chemists. (*Id.* ¶¶ 19, 33.) Neither the officers nor the State's Attorney disclosed this to Anderson's criminal defense counsel. (*Id.* ¶ 36.)

On January 18, 2022, NMS advised the State's Attorney that (1) "no determination [could]

---

[5] Anderson's arrest and related proceedings took place before Maryland decriminalized marijuana in 2023. *See Adult-Use Cannabis FAQs*, Maryland Cannabis Administration (last visited March 4, 2024), https://mmcc.maryland.gov/Pages/cannabisfaq.aspx.

be made as to whether or not the sample submitted to them in [Anderson's] case is marijuana," and (2) "submitted materials were scheduled to be discarded [in] 6 weeks." (*Id.* ¶¶ 43–44.) Neither the State's Attorney, nor the BCPD, nor Sholter or Wolferman made any objection to the suspected marijuana being destroyed. (*Id.* ¶ 45.) Despite the lack of positive confirmation that the suspected material was marijuana, and the destruction of the evidence, the State's Attorney and Officers continued the prosecution on the marijuana charges "for the sole purpose of covering up defendants' wrongful acts." (*Id.* ¶¶ 46, 77.) Over a year after receiving the inconclusive report, "the State's Attorney for Baltimore County dismissed during jury selection, by way of Nolle Prosequi, all alleged marijuana related charges against [Anderson]." (*Id.* ¶ 47.)

As a result of this prosecution, Anderson suffered humiliation, physical abuse while in custody, loss of reputation, financial hardship, fear, anguish, anxiety, loss of employment, loss of earnings, and loss of filial relationships. (*Id.* ¶ 48.)

## II.    LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). Legal conclusions, however, are entitled to no such deference and are not accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be plausible, the complaint must include "factual content that allows the court to draw the reasonable inference

4

that the defendant is liable for the misconduct alleged." *Id.* If the complaint offers mere "labels and conclusions" and "naked assertions devoid of further factual enhancement" it will not suffice. *Id.* (quotations and alterations omitted).

Defendants Sholter and Wolferman also moved for summary judgment and attached exhibits in support of that Motion. (ECF No. 20.) Baltimore County adopted Sholter and Wolferman's Motion. (ECF No. 21-1 at 7 n.3.) Because the Court will grant both Motions to Dismiss, Sholter and Wolferman's Motion for Summary Judgment is moot.[6] Because that Motion for Summary Judgment is moot, and the Court's decision relies on the pleadings alone, Anderson's Motions to Strike materials related to that Motion for Summary Judgment (ECF Nos. 24, 25) are also moot. Because Sholter and Wolferman's exhibits were irrelevant to this Court's determinations, the Court makes no statement as to whether those exhibits were properly before it.

## III.   STATE'S ATTORNEY FOR BALTIMORE COUNTY

All counts brought against the State's Attorney for Baltimore County will be dismissed with prejudice.[7]

The State's Attorney is absolutely protected from suit by prosecutorial immunity under Maryland common law. *State v. Rovin*, 246 A.3d 1190, 1206 (Md. 2021) ("Prosecutorial immunity is another type of absolute immunity and is also a common law doctrine."). "[T]he purpose of

---

[6] Additionally, it is generally inappropriate to grant summary judgment before there has been an opportunity for discovery. *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014) ("Summary judgment should only be granted 'after adequate time for discovery.'") (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

[7] Anderson's claims are brought against the "Office of the State's Attorney for Baltimore County." (ECF No. 13 ¶ 1.) The Court takes this to mean that the claim is brought against the State's Attorney in their official capacity. To the extent the § 1983 claims are brought against the State's Attorney in their official capacity, those claims are also barred by sovereign immunity. (ECF No. 13 ¶ 5); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). Additionally, the Court notes that the *Office of* the State's Attorney is not the proper party; the State's Attorney is the proper party. *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 393–95 (4th Cir. 2014).

Case 1:23-cv-01842-JKB   Document 33   Filed 03/08/24   Page 6 of 25

prosecutorial immunity is to protect prosecutors' independent decision-making by ensuring that fear of unfounded lawsuits does not affect their actions." *Id.* (noting that the applicability of the doctrine is not impacted by whether the prosecutor acted with malice). So, prosecutors have "absolute immunity with respect to claims arising from their role in the judicial process," including claims regarding "evaluating whether to commence a prosecution by criminal information, presenting evidence to a grand jury in the quest for an indictment, filing charges, preparing and presenting the State's case in court, and terminating a prosecution with or without prejudice." *Id.* at 1207 (cleaned up). The same protection applies to the claims brought under § 1983. *Burns v. Reed*, 500 U.S. 478, 486 (1991) ("[P]rosecutors are absolutely immune from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'") (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976)). And it also applies to claims pursuant to the Maryland Declaration of Rights. *Rovin*, 246 A.2d at 1208. Prosecutorial immunity applies even where harm may have been caused or where the prosecutor's actions were unlawful. *Buckley v. Fitzsimmons*, 509 U.S. 259, 271 (1993).

The claims against the State's Attorney arise from their role in the judicial process. Anderson contends that the State's Attorney acted unlawfully by continuing to prosecute Anderson and failing to disclose allegedly exculpatory information. (*See* ECF No. 13 ¶ 36, 46.) This conduct is "intimately associated with the judicial phase of the criminal process." *See Imbler*, 424 U.S. at 430. In disclosing evidence (or not) and choosing to prosecute, the State's Attorney acted as an advocate, not "in the role of an administrator or investigative officer." *Id.* at 430–31. The State's Attorney is immune from a suit for damages while doing such tasks, including deciding what information to disclose to defense counsel. *See Rovin*, 246 A.3d at 1209; *Carter v. Burch*, 34 F.3d

6

257, 262–63 (4th Cir. 1994) (holding that a prosecutor is shielded by absolute immunity when deciding whether or when to turn over exculpatory information).

Anderson also alleges that the State's Attorney failed to supervise or train its employees and had unconstitutional customs or policies. (*See, e.g.,* ECF No. 13 ¶ 77 (alleging that the State's Attorney maintained an employment policy "which consisted of a failure to train and educate assistant prosecutors on their obligation to disclose suspected marijuana testing problems, i.e. favorable evidence"); ¶ 103 ("The State's Attorney for Baltimore County maintained an employment practice and policy consisting of a deliberate failure to train and educate his assistant prosecutors on their Constitutional duty to disclose evidence favorable to the accused and material to guilt or punishment; including but not limited to, THC testing flaws/problems in suspected marijuana cases disclosed from both the Maryland State Police and [NMS]").) These allegations are intended to support his § 1983 supervisory and training claims in Count VII.

The claims in Count VII are also subject to prosecutorial immunity.[8]  *Van de Kamp v. Goldstein*, 555 U.S. 335, 338–39 (2009) (concluding that prosecutorial immunity extends to a failure to disclose impeachment information under *Giglio v. United States*, 405 U.S. 150 (1972), due to a failure to train or failure to supervise); *see also Safar v. Tingle*, 859 F.3d 241, 249 (4th Cir. 2017) ("As such, a district attorney and his chief assistant were absolutely immune from liability related to training staff prosecutors on impeachment material and managing a trial-related

---

[8] While the State's Attorney has prosecutorial immunity (and sovereign immunity, to the extent they are an arm of the state), *municipalities* can be held liable for prosecutorial training or supervision failures, if the supervising or training prosecutor acted as a policymaker for the municipality. *See Goldstein v. City of Long Beach*, 715 F.3d 750, 753 (9th Cir. 2013) ("[S]everal circuits have come to the same conclusion that we reach here, that district attorneys act as county officers when deciding administrative policy and procedures related to training or supervision, even though they act as state officers when conducting prosecutions.") (Reinhardt, J. concurring). However, the Amended Complaint alleges that the State's Attorney is a state employee and makes no allegations regarding the State's Attorney's relationship to the County, foreclosing Anderson from making this argument. (*See* ECF No. 13 ¶ 88 ("At all relevant times attorneys within the Office of the State's Attorney for Baltimore County were State employees whose actions were committed within the scope of their employment and for the benefit of the State, including actions that deprived Mr. Anderson of his Constitutional rights.")).

7

information system."). The tasks of supervision and training have sufficient judicial patina to grant prosecutorial immunity if the tasks are "directly connected with the prosecutor's basic trial advocacy duties" and "require legal knowledge and the exercise of related discretion." *Id.* at 344–46. The training that Anderson objects to is "unlike administrative duties concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities, and the like." *Id.* Training regarding *Brady* obligations "require[s] legal knowledge and the exercise of related discretion." *Id.* Anderson cites to *Van de Kamp* but fails to distinguish it or explain why it does not control here. (*See* ECF No. 27-1 at 9–11.) The State's Attorney is absolutely immune from liability related to the derivative § 1983 claims in Count VII. Accordingly, all claims against the State's Attorney for Baltimore County are dismissed with prejudice.[9]

## IV.    STATE OF MARYLAND

All claims against the State of Maryland will be dismissed with prejudice.

The claims against the State of Maryland are largely predicated on the liability of the State's Attorney for Baltimore County. (ECF No. 13 ¶ 5 ("Defendant State of Maryland is liable both via respondeat superior liability for the Constitutional Violations to Anderson by and through its co-defendant—the Office of the State's Attorney for Baltimore County. . .")[10] However, as explained above, the State's Attorney is protected from suit by prosecutorial immunity. In this

---

[9] The State's Attorney also raises statutory immunity as a defense to Anderson's claims. (ECF No. 22-1 at 7.) Even if the State's Attorney did not have absolute prosecutorial immunity, they would also be protected from suit under the Maryland Tort Claims Act ("MTCA") to the extent they are acting "within the scope of [their] public duties" and "without malice or gross negligence." *Rovin*, 246 A.3d at 1195–96. The Parties dispute whether malice or gross negligence have been properly alleged. (ECF No. 22-1 at 7–9; ECF No. 27-1 at 13–15.) However, because the State's Attorney is immune from suit here, it is not necessary for the Court to evaluate whether malice and/or gross negligence have been adequately alleged. Additionally, to the extent the State's attorney is an agent of the State of Maryland and sued in their official capacity, they are also entitled to Eleventh Amendment Immunity from suit in federal court. *Borkowski v. Baltimore Cnty.*, 492 F.Supp.3d 454, 469 (D. Md. 2020). But, again, the contours and impact of such immunity need not be discussed here, as the State's Attorney benefits from prosecutorial immunity regardless.

[10] The allegation goes on to allege that the State of Maryland is also liable "via its own negligent failure to vet [NMS] before contracting with said lab to analyze suspected CDS in Maryland criminal cases." (ECF No. 13 ¶ 5.) Because no violation has been identified with respect to the use of NMS for marijuana testing, as explained below, the Court will not further address this contention.

circumstance, that immunity also protects the state. *Rovin*, 246 A.3d at 1217 ("[W]here a plaintiff tries to hold the State civilly liable for the actions of an individual who is entitled to State personnel immunity, where the individual is also entitled to a form of absolute immunity, such as prosecutorial immunity, neither the individual nor the State is civilly liable, notwithstanding the MTCA."). Accordingly, all claims against the State of Maryland will be dismissed with prejudice.

Additionally, even if Maryland did not benefit from vicarious prosecutorial immunity, many of Anderson's claims would fail for two additional, independent reasons.

First, the State of Maryland is entitled to sovereign immunity. "Generally, under common law, the State enjoys sovereign immunity and is thus protected from suit for both ordinary torts and State constitutional torts." *Cooper v. Rodriguez*, 118 A.3d 829, 844 (Md. 2015). Maryland has partially waived sovereign immunity under the MTCA. *Id.* at 845. But that waiver is limited. The state can be sued only where the state employee acted within the scope of their public duties and without malice or gross negligence—i.e., where the employee is entitled to state personnel immunity. *Rovin*, 246 A.3d at 1207–08. Accordingly, to the extent any of the claims against the State rely on the State's Attorney's actions that were beyond the scope of their public duties or were done with malice or gross negligence, those claims are also barred by sovereign immunity. But in this circumstance, the Court need not investigate which claims might fall within the MTCA waiver. Second, the State of Maryland is not a "person" susceptible to suit under 42 U.S.C. § 1983. *Will*, 491 U.S. at 64. Accordingly, the claims against Maryland brought pursuant to § 1983 are not viable.

## V.   OFFICERS SHOLTER AND WOLFERMAN

All claims against Officers Sholter and Wolferman will be dismissed because Anderson has failed to state a claim against them upon which relief may be granted. The Court has identified

three alleged acts (or failures to act) that Anderson argues give rise to common law or constitutional torts.  First, an unlawful arrest and subsequent imprisonment.  Second, misrepresentations regarding marijuana testing abilities.  Third, failing to disclose an exculpatory report and failing to end the prosecution after the receipt of the report.  The Court will examine each of these in turn.[11]

## A.  STOP AND ARREST

First, Anderson alleges that the July 13 arrest was unlawful—warrantless and without probable cause.  (*See, e.g.,* ECF No. 13 ¶ 91 ("Defendants had no recognized justification for their warrantless search and seizure of Plaintiff Anderson.").)  Although Anderson alleges that the arrest was not supported by probable cause, (ECF No. 13 ¶ 63), this is a legal conclusion not entitled to any deference from the Court unless supported by well-pled facts.  *Iqbal*, 556 U.S. at 678.

"A warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).  Probable cause exists when there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *United States v. Carillo-Rivas*, 438 F. App'x 227, 228 (4th Cir. 2011) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).  Probable cause is "not a high bar." *United States v. Bosyk*, 933 F.3d 319, 325 (4th Cir. 2019) (quotation omitted).  Probable cause merely requires "a probability or substantial chance of criminal activity, not an actual showing of such activity." *Nero v. Mosby*, 890 F.3d 106, 130 (4th

---

[11] Anderson also alleges that Sholter and Wolferman "intentionally withheld warrant applications, warrants and warrant return document and materials from Plaintiff for the purpose of depriving the Plaintiff of the use of that evidence during his criminal trial." (ECF No. 13 ¶ 20.)  Because Anderson never had a criminal trial, the Court does not see any relevance to this allegation.

Cir. 2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 230, 243 n.13 (1983)). The officer need only have "a reasonable ground for belief of guilt" that amounts to "more than bare suspicion." *United States v. Ortiz*, 669 F.3d 439, 444 (4th Cir. 2011) (quotation omitted). Most importantly, whether probable cause exists depends on the "facts and circumstances *within the officer's knowledge*." *Carillo-Rivas*, 438 F. App'x at 228 (emphasis added) (quotation omitted).

While Anderson makes factual allegations regarding the circumstances of his arrest, he does not make allegations about what the officers *knew* or even should have known at that time.[12] He alleges facts but fails to allege that those facts were apparent or impute knowledge of those facts to Wolferman or Sholter. (*See* ECF No. 13 ¶ 11–17 (allegations regarding circumstances of arrest without mentioning knowledge of Wolferman or Sholter); *see also* ECF No. 26-1 at 3 (alleging that Anderson did not have access to or knowledge of items in the car, but failing to state whether this was known or apparent to Wolferman or Sholter during the arrest).) Without allegations clarifying what the officers knew at the time, the Court cannot make an inferential leap and conclude that the circumstances as alleged by Anderson were apparent or known to Wolferman

---

[12] The only subjective basis for the lack of probable cause proffered by Anderson relies on the lack of THC quantification available to BCPD. (*See* ECF No. 13 ¶ 100 (". . . as their actions constituted an illegal search and seizure in arresting Anderson for possession of marijuana without Probable cause to do so, as Wolferman and Sholter knew at all relevant times that the County of Baltimore could not establish the THC concentration in suspected Marijuana.").) As further detailed below, Anderson has not offered sufficient support for his contention that THC-quantification or other testing of suspected marijuana is necessary for a criminal prosecution, let alone an arrest. The Court also notes Anderson's allegation that he was arrested for "constructive possession of a firearm retrieved from a locked glove box compartment where Anderson was not the owner or person in control of the vehicle but a rear seat passenger and the key to the locked glove compartment box was retrieved from the pant waist of the owner/driver of said vehicle." (*Id.*) This allegation, which contains facts that would have been within the knowledge of the arresting officer at the time of the arrest, might be enough to suggest that there was not probable cause for an arrest predicated solely on Anderson's possession of that firearm. But this allegation is unrelated to whether there was probable cause for the arrest for marijuana possession, which forms the gravamen of Anderson's Amended Complaint. As Wolferman and Sholter pointed out, the Amended Complaint does not go into detail regarding the weapon-related charges. (*See* ECF No. 20-1 at 10.) Similarly, while Anderson alleges that Wolferman and Sholter knew "that they could NOT prove beyond a reasonable doubt that Mr. Anderson possessed marijuana," (ECF No. 13 ¶ 30), that knowledge is immaterial because "beyond a reasonable doubt" is the standard for a criminal conviction, not, as described above, the legal standard for whether probable cause exists for an arrest. *See Durham v. Horner*, 690 F.3d 183, 190 (4th Cir. 2012) (holding that probable cause requires only "enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required") (quotation omitted).

11

and Sholter and therefore that no probable cause existed.[13] Anderson's allegations are, at most, "merely consistent with" liability and fall short of showing "plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quotation omitted). To be clear, the Court does not conclude that there *was* probable cause to arrest or detain Anderson. The Court merely concludes that Anderson has not adequately alleged that the stop, arrest, and/or detention were unlawful.

Anderson cites to *Livingston v. State*, 564 A.2d 414 (Md. 1989) and *Pringle v. State*, 805 A.2d 1016 (Md. 2002) in support of his contentions, but his reliance on both is misplaced. (ECF No. 23-1 at 13.) In *Livingston*, the court concluded that an officer did "not possess sufficient cause to believe that a backseat passenger has dominion and control over two marijuana seeds on the front floor of a car." 564 A.2d at 415. Anderson, however, makes no allegations about the quantity of any alleged marijuana nor the location of it at the time of the stop. (*See* ECF No. 13 ¶¶ 11–17.) Without additional details as to the position or quantity of the alleged marijuana in the car, the Court cannot conclude that arresting Anderson with possession of marijuana was unlawful under *Livingston*. Other than alleging that he "was not aware of any substances or materials possibly contained" in the car, Anderson gives no additional details. (*See* ECF No. 13 ¶¶ 11–17.)

*Pringle* was overturned by the Supreme Court, which Anderson fails to note or address. *Maryland v. Pringle*, 540 U.S. 366, 367–68 (2003) (holding that an officer had probable cause to arrest front-seat passenger where rolled-up cash was found in the glove compartment and five baggies of cocaine were found "between the back-seat armrest and the back seat"). Indeed, *Pringle* undermines Anderson's arguments, as the Supreme Court found it "entirely reasonable" for the

---

[13] Anderson does allege that "Defendant Officers Wolferman and Sholter and the State's Attorney for Baltimore County started and acted in concert to continue a criminal prosecution against Plaintiff Mr. Anderson by alleging marijuana, and marijuana related offenses, that said Defendant Officers and the State's Attorney for Baltimore County knew in advance to be false." (ECF No. 13 ¶ 70 (emphasis added).) Putting aside the allegations about the State's Attorney, which are covered by prosecutorial immunity, as discussed above, this allegation is conclusory because it fails to explain *how* the Officers knew that the marijuana-related charges were false. *See Iqbal*, 556 U.S. at 678.

officers to infer that *all* the occupants in the car "had knowledge of, and exercised dominion and control over, the cocaine." *Id.* at 372–73 (finding it reasonable to assume the three car passengers were engaged in a "common enterprise").

To the extent Anderson argues that his arrest was unlawful because it was "tainted from the unlawful traffic stop," (ECF No. 23-1 at 15), he still fails to state a claim. Anderson does not make any allegations about the circumstances of the stop except to state that it was unlawful. (*See* ECF No. 13 ¶ 11.) A vehicle stop, which does not constitute a formal arrest, need be merely "reasonable." *See Livingston*, 564 A.2d at 416. Anderson gives the Court no factual basis to conclude that the stop was not reasonable. Taking all of Anderson's allegations as true and drawing all reasonable inferences in his favor, the Court cannot conclude that he has adequately alleged that the stop or arrest were unlawful.

## B.    MISREPRESENTATIONS ABOUT TESTING CAPABILITIES

Second, Anderson alleges that Wolferman "misrepresented under oath in a Statement of Probable Cause that he had training, knowledge and experience to determine whether a brown-plant [substance] was or was not marijuana, as defined under the Criminal Law Article and the Agriculture Article of the Maryland Code" and that "[n]either Detective Wolferman nor Detective Sholter were, at the time of their arresting and charging Mr. Anderson, chemists certified under Maryland law to test or testify to [the] THC content in any plant-like substance, suspected of being marijuana." (ECF No. 13 at ¶ 26–27; *see also* ¶ 40 ("[D]espite knowing that no chemist at [NMS] . . . had obtained Maryland Department of Health certifications as required . . . and, despite being informed that all outsourcing of seized suspected marijuana to [NMS] had been ceased . . . Detectives Wolferman and Sholter and other members of the [BCPD] along with the [State's Attorney] lied to a grand jury in representing that Mr. Anderson possessed marijuana.").) There

13

are also more vague allegations, which do not specify precisely *what* misrepresentations were made. (*See, e.g., id.* ¶ 101 ("Defendant officers Wolferman and Sholter presented false testimony in seeking search warrants for Plaintiff's mother's house.").) And that the County's inability to quantify THC content was itself exculpatory information that should have been disclosed to defense counsel. (*See id.* ¶ 36.)

The only reasonable inference is that these allegations all hinge on the contention that without scientific testing by a specific type of lab or lab personnel there is no probable cause to arrest and/or charge a person with marijuana possession in Maryland. (*See, e.g., id.* ¶ 18 (". . . the [BCPD] did not have the ability to establish, pursuant to the relevant threshold standards for a criminal prosecution, that a substance was in fact marijuana without outsourcing said testing to [NMS].").) In support of these contentions, Anderson directs the Court to Md. Code Ann., Cts. & Jud. Proc. § 10-1001. (*Id.* ¶ 53.)

This section of the Maryland Code, however, does not support Anderson's argument. Section 10-1001 merely establishes (1) what constitutes prima facie evidence that a particular substance is a controlled dangerous substance, and (2) when it is or is not necessary for the testing chemist or analyst to appear in court. Md. Code Ann., Cts & Jud. Proc., § 10-1001. The section does not speak to the relevant evidentiary thresholds to charge or convict someone with possession of marijuana, nor does it change the probable cause standard in any way. According to Maryland's highest court, "Cts. & Jud. Proc. § 10-1001 exists for the purpose of establishing that physical evidence in a criminal or civil proceeding constitutes a particular controlled dangerous substance. The statute provides that when the testing of a substance has occurred in a scientifically reliable manner and recorded in a written report, the testimony of the chemist or analyst is not required at trial." *Wheeler v. State*, 187 A.3d 641, 648 (Md. 2018) (cleaned up) ("Taken together, the statutory

14

scheme surrounding the enactment of Cts. Jud. Proc. §§ 10-1001, 10-1002, and 10-1003 sought to ease the formal requirements for admitting suspected drugs into evidence.").

Section 10-1001 has nothing to do with whether there was probable cause to arrest, charge, or detain Anderson. Whether Sholter or Wolferman were chemists qualified by the Maryland Department of Health is similarly irrelevant. So long as Sholter and Wolferman had "a reasonable ground for belief of guilt" that amounts to "more than bare suspicion," they had probable cause to arrest Anderson. *See Ortiz*, 669 F.3d at 444 (quotation omitted). While the Court takes seriously allegations that the Defendants made misrepresentations to arrest and charge Anderson, Anderson has not alleged any specific misrepresentations that do not rely on his misinterpretation of § 10-1001. It could be difficult to successfully *convict* someone of marijuana possession if the state was unable to prove beyond a reasonable doubt that the substance allegedly possessed actually was marijuana. But that is not the standard for arresting someone or charging them with a crime. Accordingly, Anderson has failed to adequately allege that Wolferman or Sholter made any misrepresentations in the course of arresting or charging him.

## C.    EXCULPATORY REPORT

Third, Anderson alleges that the State's Attorney received a report from NMS stating that "no determination can be made as to whether or not the sample submitted to them in Plaintiff's case is marijuana." (ECF No. 13 ¶ 43.) Despite this, the State's Attorney continued the prosecution for a year after receiving the report. (*Id.* ¶ 47.) The Amended Complaint implies, but does not state, that this exculpatory report was not turned over to Anderson's counsel. (*See id.* ¶¶ 43–47.) Anderson argues that this failure to disclose exculpatory evidence is a Due Process violation. (ECF No. 23-1 at 18–23.)

Taking the allegations as true, this report may have caused probable cause to dissipate, at

15

least regarding the marijuana possession charges.  However, even assuming that failing to disclose the report was a Due Process violation, Anderson fails to sufficiently allege that *Wolferman and Sholter* violated Anderson's Due Process rights.  Anderson does not allege that Wolferman or Sholter ever received, or even knew about, the report.  (*See* ECF No. 13 ¶¶ 43–47.)  Nor does Anderson allege that the report was withheld from his criminal defense counsel.  (*Id.*) Accordingly, Anderson has failed to adequately allege that Wolferman or Sholter committed any Due Process violation.

### D.   CLAIMS

Having examined Anderson's allegations and concluded that he has failed to allege any violation committed by Sholter or Wolferman, the Court will now address each of Anderson's claims against them in turn.

#### 1.   False Arrest (Count I)

To bring a false arrest claim, a "plaintiff must establish that the defendant deprived him or her of his or her liberty without consent and without legal justification." *Okwa v. Harper*, 757 A.2d 118, 133 (Md. 2000) (quotation omitted).  As discussed above, probable cause constitutes legal justification for an arrest without a warrant.  To the extent Anderson's constitutional claims are based on a false arrest, similarly, "[t]here is no cause of action for false arrest under section 1983 unless the arresting officer lacked probable cause." *Harrison v. Deane*, 426 F. App'x 175, 181 (4th Cir. 2011) (quotation omitted).  Anderson failed to sufficiently allege that the officers lacked probable cause for his arrest, as explained above.  Accordingly, he has failed to state a claim for false arrest and Count I will be dismissed.

#### 2.   False Imprisonment (Count II)

"[U]nder both federal and State law, a claim for false imprisonment can only occur when

there is no legal authority or justification for the arresting officer's actions." *Estate of Bryant v. Balt. Police Dep't*, Civ. No. ELH-19-384, 2020 WL 673571, at *25 (D. Md. Feb. 10, 2020) (quotation omitted). As explained above, Anderson has not sufficiently alleged that Sholter or Wolferman lacked probable cause for their actions. Accordingly, the false imprisonment claim will be dismissed.

### 3. *Malicious Prosecution (Count III)*

To state a claim for malicious prosecution, Anderson must allege "1) a criminal proceeding instituted or continued by the defendant against the plaintiff; 2) without probable cause; 3) with malice, or with a motive other than to bring the offender to justice; and 4) termination of the proceeding in favor of the plaintiff." *Heron v. Strader*, 761 A.2d 56, 59 (Md. 2000). Probable cause to initiate or continue a criminal prosecution exists if the initiator "correctly or reasonably believes (a) that the person whom he accuses has acted or failed to act in a particular manner, and (b) that those acts or omissions constitute the offense that he charges against the accused, and (c) that he is sufficiently informed as to the law and the facts to justify him in initiating or continuing the prosecution." *Rovin*, 246 A.3d at 1219.

As described above, Anderson has not sufficiently alleged a lack of probable cause at the time of the arrest and initial detention. While probable cause may have dissipated after the issuance of the exculpatory report, Anderson does not allege that the officers saw that report. Where the officers did not have the report, it cannot have negated probable cause from their perspective.

Further, while the Amended Complaint alleges that "Defendant Officers Wolferman and Sholter and the State's Attorney for Baltimore County started and acted in concert to continue a criminal prosecution against [Anderson,]" the Amended Complaint does not present any facts to

17

support that contention. (ECF No. 13 ¶ 70.) It does not explain what Wolferman or Sholter *did* to continue the prosecution or what role they played in the prosecution after the initial arrest and charging. It is not clear that Sholter or Wolferman could bear any responsibility for the continuing prosecution, given the involvement of the State's Attorney. *See Smithfield Packing Co. v. Evely*, 905 A.2d 845, 854 (Md. Ct. Spec. App. 2006) ("[A] defendant may not be held liable for malicious prosecution for relying upon the independent judgment of a prosecutor or attorney where the defendant has made a full disclosure of all material facts relative to the charges being made.") (citation omitted). Accordingly, the malicious prosecution claim will be dismissed.

### 4. *Abuse of Process (Count IV)*

"Abuse of process occurs when a party has willfully misused criminal or civil process after it has issued in order to obtain a result not contemplated by law." *Commodore v. Calvert Cnty. Bd. of Cnty. Comm'rs*, Civ. No. DKC-07-0661, 2009 WL 10685347, at *3 (D. Md. Feb. 10, 2009) (cleaned up). The legitimacy of the underlying action is not an element of this tort. *Id.* But, the plaintiff must allege that the defendant actually was responsible for the use of process against the plaintiff. *Id.*

Anderson alleges that the Defendants "willfully used the criminal justice process/proceedings . . . for the sole purpose of covering up defendants' wrongful acts and unlawful seizure then continued unlawful detention of Mr. Anderson arising from a pretextual traffic stop; in a manner not contemplated by law." (ECF No. 13 ¶ 77.) As described above, however, Anderson does not provide factual allegations showing that *Sholter or Wolferman* were responsible for the continuing prosecution of Anderson. Rather, it appears from the allegations that the State's Attorney was responsible for the ongoing prosecution. Wolferman and Sholter cannot be held liable for an ongoing prosecution that they did not direct or continue. *See*

*Commodore*, 2009 WL 10685347, at *3 ("With no evidence that DFC Windsor was in any way responsible for any use of criminal process against Plaintiffs, any claim for abuse of process fails.").

> 5.    *42 U.S.C. § 1983 / Maryland Declaration of Rights: Fabrication of Evidence (Counts V, VI)*

To state a claim under § 1983, Anderson must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To state a claim for fabrication of evidence pursuant to § 1983, a plaintiff must allege that an officer fabricated evidence resulting in a deprivation of liberty. *Washington v. Wilmore*, 407 F.3d 274, 282 (4th Cir. 2005).[14]

Anderson's claim fails at the first step—he has not actually alleged any fabrication, because his claim relies on the availability (or lack thereof) of THC-quantification testing in Baltimore County. (*See, e.g.,* ECF 13 ¶ 108 ("Baltimore County Maryland maintained a pattern and practice and employment policy consisting of one that included a deliberate intentional failure to train police officers against fabricating evidence; namely misrepresenting the County of Baltimore's inability to test possible THC content in suspected marijuana cases and representing, under oath, that defendant police officers were qualified to conclusively identify suspected marijuana as marijuana under Maryland State law.") (emphasis added).) But this is not a fabrication of any evidence. Any statement that Wolferman and Sholter were able to identify marijuana is unrelated to the testing capabilities (or lack thereof) in Baltimore County. The testing required under § 10-

---

[14] Because, as noted below, the relevant provisions of the Maryland Declaration of Rights are coextensive with the Fourth and Fourteenth Amendments, the Court's § 1983 analysis applies with equal force to the claims under the Maryland Declaration of Rights.

1001 is unrelated to officer qualifications to make arrests in the field. Accordingly, fabrication of evidence claims will be dismissed.

### 6.    *42 U.S.C. § 1983: Fourth Amendment (Count V, VI)*

The Fourth Amendment protects against unlawful seizures and arrests. *Safar*, 859 F.3d at 245. As described above, however, Anderson has failed to plausibly allege that his arrest was unlawful, and the Court therefore cannot discern a Fourth Amendment violation committed by Sholter or Wolferman. Accordingly, Fourth Amendment claims will be dismissed.

### 7.    *42 U.S.C. § 1983: Fourteenth Amendment (Count VI)*

The only plausible Fourteenth Amendment claim that the Court can discern is a Due Process violation relating to the allegedly exculpatory report. The Court takes this to be a *Brady* claim. *Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). To plead a *Brady* claim, Anderson must allege "(1) that the evidence at issue was favorable to him; (2) the Officers suppressed the evidence in bad faith; and (3) prejudice ensued." *Owens,* 767 F.3d at 396–97.

*Brady* obligations do not extend to Sholter and Wolferman where Anderson does not allege that Sholter or Wolferman received the allegedly exculpatory report, as described above. Wolferman and Sholter cannot suppress evidence they do not possess, and they certainly cannot do so in bad faith. Accordingly, Anderson has failed to state a claim under the Fourteenth Amendment.

### 8.    *Article 24 of the Maryland Declaration of Rights (Count V)*

"Article 24 of the Maryland Declaration of Rights and the Fourteenth Amendment of the

United States Constitution have the same meaning." *Pitensberger v. Pitensberger*, 410 A.2d 1052, 1056 (Md. 1980). Article 24 is interpreted *in pari materia* with the Fourteenth Amendment. *Taylor v. Go-Getters, Inc.*, Civ. No. ELH-20-3624, 2021 WL 5840956, at \*16 (D. Md. Dec. 9, 2021). Accordingly, this claim will be dismissed for the same reasons as the Fourteenth Amendment claim.

> 9.   *Article 26 of the Maryland Declaration of Rights (Count X)*

Article 26 "ensures the same protections afforded by the Fourth Amendment and is interpreted and applied correspondingly." *Brummell v. Talbot Cnty. Bd. of Educ.*, Civ. No. RDB-22-1601, 2023 WL 2537438, at \*7 (D. Md. March 16, 2023). Accordingly, this claim will be dismissed for the same reasons as the Fourth Amendment claims.

> 10.   *42 U.S.C. § 1983: Negligent Supervision, Training, Retention and Custom or Policy of Deliberate Indifference (Count VII)*

First, these § 1983 claims fail because they require an adequately alleged underlying constitutional violation. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (holding that a supervisory liability claim requires that the plaintiff have suffered a constitutional injury). As explained above, the Court has reviewed the Amended Complaint and concluded that Anderson has not adequately alleged any constitutional (or other) violation.

Further, there are no allegations that Wolferman or Sholter were responsible for any supervision, training, hiring, firing, or policymaking. (*See generally* ECF No. 13.) For example, to bring a supervisory liability claim under § 1983, a plaintiff must allege, *inter alia*, that the *supervisor* had actual or constructive knowledge that their subordinate was engaged in potentially constitutionally injurious conduct. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Anderson has failed to allege that Wolferman or Sholter had any supervisory responsibilities. The same logic

21

applies to the negligent training claim (there are no allegations that Wolferman or Sholter did or should have trained anyone); the negligent retention claim (no allegations that they had any hiring or firing responsibilities); and custom and policy claim, which the Court construes as a claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), (no allegations that either Sholter or Wolferman set policy for the BCPD). Accordingly, this claim will be dismissed as to Wolferman and Sholter.

11. *Intentional Infliction of Emotional Distress (Count VIII)*

To bring an IIED claim, the plaintiff must allege "(1) [t]he conduct at issue was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there is causal connection between the extreme and outrageous conduct and the resultant distress; and (4) the emotional distress is severe." *Haines v. Vogel*, 249 A.3d 151, 162–63 (Md. Ct. Spec. App. 2021) (citing Restatement (Second) of Torts § 46 and *Harris v. Jones*, 380 A.2d 611 (1977)). The emotional distress must be so severe that "no reasonable person could be expected to endure it" and the claimant must be "unable to function or to tend to necessary matters." *Id.* at 165 (quotations omitted).

Anderson alleges that he "suffered physical and/or non-physical injury, sustained economic damages for the cost of medical/mental health care expenses and lost wages as well as non-economic damages for the pain, suffering, fear, fright, humiliation, inconvenience, embarrassment and severe emotional distress for the totality of events that he was forced to endure." (ECF No. 13 ¶ 125.) The Court does not doubt that Anderson's ordeal had a serious impact on his life. But Anderson has not alleged the inability to function necessary to bring an IIED claim in Maryland. Accordingly, Count VIII will be dismissed.

**VI.   BALTIMORE COUNTY**

All claims against Baltimore County will be dismissed.

Turning first to the common law torts (Counts I, II, III, IV, and VIII), "Maryland law is well settled that a county (or municipality) generally enjoys immunity against common law tort liability arising out of acts that are governmental, as opposed to acts that are private or proprietary." *Clark v. Prince George's Cnty.*, 65 A.3d 785, 790 (Md. Ct. Spec. App. 2013) (citation omitted). Operating a police department is "quintessentially governmental." *Id.* at 791.[15] Accordingly, the County is immune from direct liability for any common law tort claims, and those claims will be dismissed.

With respect to the Maryland Constitutional violations, the County can be held liable directly for its own actions or in respondeat superior for the actions of its employees. *See Serio v. Balt. Cnty.*, 863 A.2d 952, 967 (Md. 2004). However, there must be an actual violation of a Maryland constitutional right. As described above, Anderson has failed to allege a violation of either Article 24 or 26 of the Maryland Declaration of Rights. Accordingly, claims alleging violations of the Maryland Declaration of Rights will be dismissed.

Turning to the federal constitutional claims, municipalities, like Baltimore County, are "persons" who can be held liable under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, "a municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S. at 691. "[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Plaintiffs seeking to hold a municipality liable under § 1983 must identify a

---

[15] Under the Local Government Tort Claims Act, a "local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government." Md. Code Ann., Cts. & Jud. Proc. § 5-303(b)(1). Thus, Baltimore County can be required to indemnify its employees—here, Sholter and Wolferman—to the extent any alleged tortious acts were committed within the scope of their employment. *See Balt. City Police Dep't v. Potts*, 227 A.3d 186, 197 (Md. 2020). But, since no claims against Sholter or Wolferman will survive, even assuming a claim for indemnification against the County could be read into the Amended Complaint, which fails to mention indemnification, any such indemnification claim would be dismissed.

municipal policy or custom that caused the injury. *Id.* (citations omitted). There are three ways a plaintiff can demonstrate such an official policy: (1) "a written ordinance or regulation;" (2) "certain affirmative decisions of policymaking officials;" and (3) "certain omissions made by policymaking officials that manifest deliberate indifference to the rights of citizens." *Saltz v. City of Frederick*, 538 F.Supp.3d 510, 554 (D. Md. 2021) (quotation omitted).

Regardless of whether Anderson has adequately alleged a custom or policy attributable to Baltimore County, to be held liable for an unconstitutional policy, such as a failure to train or supervise, there must be an adequately alleged underlying constitutional violation committed by a municipal employee. *See Artiga Carrero v. Farrelly*, 270 F.Supp.3d 851, 864 (D. Md. 2017) (requiring a violation of the plaintiff's constitutional or statutory rights before imposing liability for a failure to train). As outlined above, Anderson has not adequately pled any violation on the part of Sholter or Wolferman. Accordingly, Count VII will be dismissed.

Lastly, Anderson agrees that punitive damages are not available from the County. (ECF No. 26-1 at 15.) Accordingly, the punitive damages claims against the County will be dismissed with prejudice.

## VII.   CONCLUSION

For the foregoing reasons, Sholter and Wolferman's Motion for Leave to File a Physical Exhibit (ECF No. 19) will be denied as moot; Sholter and Wolferman's Motion to Dismiss or for Summary Judgement (ECF No. 20) will be granted insofar as it moves to dismiss and denied insofar as it moves for summary judgment; the County's Motion to Dismiss (ECF No. 21) will be granted, the State and State's Attorney's Motion to Dismiss (ECF No. 22) will be granted; Anderson's Motions to Strike (ECF Nos. 24 & 25) will be dismissed as moot, and the Amended Complaint will be dismissed in its entirety. A separate Order will follow.

24

DATED this ___7___ day of March, 2024.

BY THE COURT:

James K. Bredar
Chief Judge